1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                 January 2024 Grand Jury

11  UNITED STATES OF AMERICA,          No. 2:24-CR-00630-PA

12          Plaintiff,                 I N D I C T M E N T

13          v.                         [18 U.S.C. § 241: Conspiracy
                                       Against Rights; 18 U.S.C. § 242:
14  ADAM IZA,                          Deprivation of Rights Under Color
        aka "The Godfather,"           of Law; 26 U.S.C. § 7201: Evasion
15      aka "Ahmed Faiq,"              of Tax Assessment; 18 U.S.C.
        aka "Diego,"                   § 924(d)(1), 26 U.S.C.
16      aka "Diego Facebook,"          § 7301 and 28 U.S.C. § 2461(c):
        aka "Tony Brambilla,"          Criminal Forfeiture]
17      aka "Leo,"

18          Defendant.

19

20

21

22

23      The Grand Jury charges:

24                     INTRODUCTORY ALLEGATIONS

25      At times relevant to this Indictment:

26      1.    Defendant ADAM IZA, also known as ("aka") "The Godfather,"

27  aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony

28  Brambilla," aka "Leo" ("IZA"), was a citizen of the United States and

**FILED**
CLERK, U.S. DISTRICT COURT

10/22/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

resided in Los Angeles and Newport Coast, California, within the Central District of California.

2.    Co-Conspirator 1 was a citizen of the United States and resided in Los Angeles and Newport Coast.

3.    The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn deputies.

4.    LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, and LASD Deputy 4 were sworn law enforcement officers employed by the LASD. As LASD deputies, LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, and LASD Deputy 4 had access to sensitive law enforcement databases and other confidential databases from which they could obtain personal identifying information about individuals, including addresses, registered vehicles, and criminal backgrounds.

5.    LASD Deputy 1 was also a federal Task Force Officer ("TFO") assigned to a task force involving a federal law enforcement agency.

6.    Defendant IZA and Victim E.Z. were engaged in a dispute involving a laptop computer believed to contain over $100 million in cryptocurrency accessible through multiple passcodes and private keys.

7.    Zort, Inc. ("Zort") was a company that had developed an artificial intelligence-based cryptocurrency trading platform. Defendant IZA incorporated Zort on or about January 30, 2020, in the State of Delaware.  Zort was registered with the Internal Revenue Service ("IRS") as a C corporation.

8.    Dream Agency ("Dream") was a purported social media company that Co-Conspirator 1 incorporated on or about February 8, 2021, in the State of California.  Co-Conspirator 1 was the only director and officer of Dream.  Dream was registered with the IRS as an S corporation, using Co-Conspirator 1's Social Security number.

9.    Rise Agency, Inc. ("Rise") was a purported e-commerce company that Co-Conspirator 1 incorporated on or about April 8, 2022, in the State of California.  Initially, Co-Conspirator 1 was the only director and officer of Rise.  Defendant IZA replaced Co-Conspirator 1 as the Chief Executive Officer ("CEO") and director of Rise on or about November 3, 2022.  Rise was registered with the IRS as an S corporation, using Co-Conspirator 1's Social Security number.

10.    Defendant IZA and Co-Conspirator 1 opened and had signatory authority over Zort corporate bank accounts, including accounts at Bank of America ("BOA") and JPMorgan Chase Bank ("Chase").  Defendant IZA and Co-Conspirator 1 were the only signatories on the Zort bank accounts.

11.    Co-Conspirator 1 opened and had signatory authority over Dream corporate bank accounts, including accounts at BOA and Chase. Co-Conspirator 1 was the sole signatory on the Dream bank accounts.

12.    Co-Conspirator 1 opened and had signatory authority over a Rise corporate bank account with Chase.  Initially, Co-Conspirator 1 was the sole signatory on the Rise bank account.  On May 4, 2022, defendant IZA was added as a signatory to the Rise bank account.

13.    The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

14.  IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

15.  IRS Form 1120, U.S. Corporation Income Tax Return ("Form 1120"), was a form generally used to report the income, gains, losses, deductions, and credits of a C corporation.

16.  Defendant IZA and Co-Conspirator 1 derived substantial gross income from fraudulent schemes, used the Zort, Dream, and Rise bank accounts to receive such income, funneled the proceeds to their personal bank accounts, and used the proceeds for their personal benefit.

17.  In one such scheme, defendant IZA illicitly and fraudulently gained access to advertising accounts and lines of credit provided by Facebook, Inc. and Meta Platforms, Inc. (collectively, "Meta") and sold that access to various advertising companies.

18.  Defendant IZA used fictitious names, including "Diego Facebook," "Tony Brambilla," and "Leo," to communicate with customers purchasing access to the advertisement accounts and lines of credit. Defendant IZA, communicating through his aliases, instructed customers to send payments to the Zort, Dream, and Rise bank accounts.  Defendant IZA, communicating through his aliases, told customers that Zort was his over-the-counter broker through which he would receive payment, thereby hiding his direct control over Zort and its bank accounts.

19.  From approximately 2020 through 2022, defendant IZA and Co-Conspirator 1 received approximately $33 million associated with the

sale of access to the Meta advertisement accounts into the Zort, Dream, and Rise bank accounts from domestic and international payors.

20.    These Introductory Allegations are incorporated into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 241]

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to until at least in or around June 2022, in Los Angeles, Orange, and Riverside Counties, within the Central District of California, and elsewhere, defendant ADAM IZA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate persons of the State of California in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

More specifically, defendant IZA, LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 4, and others known and unknown to the Grand Jury, would enter into a scheme to intimidate, harass, and threaten individuals adverse to defendant IZA and to obtain property, including by using confidential information and court-authorized search warrants obtained by LASD deputies in their official capacities.

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
      ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Defendant IZA would hire active LASD deputies to act as his personal bodyguards, accompanying him 24 hours per day, seven days per week.

2.    Defendant IZA and Co-Conspirator 1 would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers from the Zort and Dream bank accounts.

3.    The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying defendant IZA.

4.    Defendant IZA would inform the LASD deputies about individuals with whom he had personal and/or monetary disputes and obtain the LASD deputies' assistance gathering information about those individuals and/or obtaining property from them or retaliating against them.

5.    The LASD deputies would use their powers as sworn law enforcement officers to improperly access sensitive law enforcement databases and other confidential databases to obtain personally identifiable information ("PII") about individuals, including addresses, registered vehicles, and criminal backgrounds.

6.    The LASD deputies would use their powers as sworn law enforcement officers to improperly obtain court-authorized search warrants related to individuals with whom defendant IZA had disputes, including warrants to search individuals' residences and to obtain location information associated with those individuals.

7.    Defendant IZA, the LASD deputies, and their associates would use confidential information that the LASD deputies obtained in their official capacities to locate, confront, threaten, and extort individuals with whom defendant IZA had disputes and/or their associates.

8.    Defendant IZA, the LASD deputies, and their associates would plan to steal, attempt to steal, and steal property from

1  individuals with whom defendant IZA had disputes and/or their

2  associates.

3      9.   Defendant IZA, the LASD deputies, and their associates

4  would intimidate, harass, and threaten individuals with whom

5  defendant IZA had disputes and/or their associates, including by

6  threatening violence and by using confidential information that the

7  LASD deputies obtained in their official capacities.

8      10.   Defendant IZA and the LASD deputies and other associates

9  would conceal their activities by communicating using encrypted

10  communications applications, including Telegram, to avoid law

11  enforcement detection.

12  C.   OVERT ACTS

13      On or about the following dates, in furtherance of the

14  conspiracy and to accomplish the object of the conspiracy, defendant

15  IZA and others known and unknown to the Grand Jury committed and

16  caused to be committed various overt acts within the Central District

17  of California, and elsewhere, including the following:

18      ***Scheme Involving Victims R.C. and D.D.***

19      Overt Act No. 1:   On August 15, 2021, during or following an

20  event organized by Victim R.C. at defendant IZA's residence in the

21  Bel Air neighborhood of Los Angeles, defendant IZA's bodyguards, at

22  least one of whom was a law enforcement officer, held Victim R.C. at

23  gunpoint in defendant IZA's office, at defendant IZA's direction.

24      Overt Act No. 2:   On August 15, 2021, defendant IZA, who had

25  multiple firearms in his immediate vicinity, demanded that Victim

26  R.C. give defendant IZA the passcode to Victim R.C.'s phone.

27      Overt Act No. 3:   On August 15, 2021, while Victim R.C. was

28  being held at gunpoint in defendant IZA's office, defendant IZA

accessed Victim R.C.'s phone and used it to transfer $25,000 --
representing roughly half the amount Victim R.C. received for
organizing the event -- from Victim R.C.'s business's bank account to
a bank account for Zort.

Overt Act No. 4:    On August 15, 2021, defendant IZA took
photographs of Victim R.C.'s driver's license, passport, and multiple
credit cards.

Overt Act No. 5:    In or around August 2021, after the incident
at defendant IZA's Bel Air residence, defendant IZA used Victim
R.C.'s phone and information to deplete Victim R.C.'s accounts of
tens of thousands of dollars.

Overt Act No. 6:    Beginning on August 15, 2021, defendant IZA
began communicating regularly with Victim R.C.'s then-romantic
partner, Co-Conspirator 2, who attended the event at defendant IZA's
Bel Air residence with Victim R.C. on or about August 15, 2021.

Overt Act No. 7:    On August 17, 2021, defendant IZA caused a
text message to be sent to Victim R.C. stating: "Bother [Co-
Conspirator 2] again and you will know who I am.  Text or call [Co-
Conspirator 2] again and I will show up at your house."

Overt Act No. 8:    In or around August 2021, defendant IZA
engaged LASD Deputy 1's company, Security Company 1, to provide
security-related services for defendant IZA.

Overt Act No. 9:    Beginning in or around August 2021,
defendant IZA directed payments to LASD Deputy 1 and/or Security
Company 1 of approximately $100,000 per month through a combination
of wire transfers and cash payments from the Zort and Dream bank
accounts.

1    <u>Overt Act No. 10:</u>    In or around August 2021, LASD Deputy 1

2    began assigning teams of active LASD deputies to accompany defendant

3    IZA 24 hours per day, seven days per week.

4    <u>Overt Act No. 11:</u>    In or around mid-to-late 2021, defendant IZA

5    separately engaged LASD Deputy 2 to provide security-related services

6    for defendant IZA.

7    <u>Overt Act No. 12:</u>    Beginning in or around the fall 2021, two

8    businesses associated with LASD Deputy 2 collectively received tens

9    of thousands of dollars in wire transfers from Zort, Dream, and Co-

10   Conspirator 1.

11   <u>Overt Act No. 13:</u>    On September 24, 2021, LASD Deputy 1

12   contacted an LASD narcotics detective and informed him that a

13   confidential informant said that Victim R.C. was selling narcotics

14   and that Victim R.C. stored large quantities of fentanyl and cocaine

15   at Victim R.C.'s residence in Los Angeles.

16   <u>Overt Act No. 14:</u>    On September 24, 2021, LASD Deputy 1

17   deliberately concealed from the narcotics detective LASD Deputy 1's

18   relationship with defendant IZA and that defendant IZA was paying

19   LASD Deputy 1 large sums of money.

20   <u>Overt Act No. 15:</u>    In or around late September 2021, at

21   defendant IZA's direction, Co-Conspirator 2 contacted Victim R.C.,

22   who was in Florida, and persuaded Victim R.C. to return to Los

23   Angeles.

24   <u>Overt Act No. 16:</u>    In or around late September 2021, Co-

25   Conspirator 2 paid for a flight for Victim R.C. to travel from

26   Florida to Los Angeles.

27   <u>Overt Act No. 17:</u>    On September 26, 2021, defendant IZA met Co-

28   Conspirator 2 and gave Co-Conspirator 2 hundreds of dollars.

1    Overt Act No. 18:    On September 27, 2021, Co-Conspirator 2
2    picked up Victim R.C. in Los Angeles in a vehicle, purportedly to
3    take Victim R.C. to Co-Conspirator 2's residence.

4    Overt Act No. 19:    On September 27, 2021, Victim R.C. used the
5    money defendant IZA gave Co-Conspirator 2 to purchase illegal drugs.

6    Overt Act No. 20:    On September 27, 2021, LASD Deputy 4
7    conducted a traffic stop of the vehicle driven by Co-Conspirator 2,
8    in which Victim R.C. was a passenger, in Paramount, California, after
9    purportedly observing a lane violation.

10    Overt Act No. 21:    On September 27, 2021, after speaking with
11    Co-Conspirator 2 and Victim R.C., LASD Deputy 4 indicated that Victim
12    R.C. had an outstanding warrant and placed Victim R.C. in the back of
13    an LASD patrol vehicle.

14    Overt Act No. 22:    On September 27, 2021, Co-Conspirator 2 told
15    LASD Deputy 4 that Victim R.C. had placed drugs under the front
16    passenger seat and gave LASD Deputy 4 consent to search the vehicle;
17    during the ensuing search, LASD Deputy 4 found a plastic bag
18    containing suspected cocaine under the front passenger seat and two
19    bags containing psilocybin mushrooms inside Victim R.C.'s backpack.

20    Overt Act No. 23:    On September 27, 2021, based upon LASD
21    Deputy 4's traffic stop, LASD Deputy 4 caused Victim R.C. to be
22    charged with transportation of a controlled substance and jailed for
23    several days before the charges were dropped for lack of sufficient
24    evidence.

25    Overt Act No. 24:    On September 27, 2021, LASD Deputy 4 failed
26    to arrest or cite Co-Conspirator 2, who had no identification and
27    gave LASD Deputy 4 a fictitious name, birth date, and phone number.

28

1    <u>Overt Act No. 25:</u>   On September 27, 2021, defendant IZA
2  communicated with Co-Conspirator 2 before, during, and after the
3  traffic stop and arrest of Victim R.C.

4    <u>Overt Act No. 26:</u>   On September 27, 2021, defendant IZA
5  traveled to Paramount and observed Victim R.C.'s arrest, including
6  from inside defendant IZA's SUV, which was parked nearby.

7    <u>Overt Act No. 27:</u>   On October 1, 2021, defendant IZA caused
8  text messages to be sent to Victim R.C. containing a photograph of
9  Victim R.C.'s booking photograph and stating: "Worthless loser.
10 Congrats on the drug felony arrest."

11   <u>Overt Act No. 28:</u>   On October 1, 2021, defendant IZA caused
12 text messages to be sent to Victim R.C. that stated, "For a drug
13 dealer, you fucked with the wrong people," along with a photograph of
14 Victim R.C.'s September 27, 2021 arrest in progress, apparently taken
15 from inside a nearby vehicle.

16   <u>Overt Act No. 29:</u>   On October 2, 2021, after Victim R.C.
17 complained about being set up, defendant IZA caused a text message to
18 be sent to Victim R.C. stating: "The cops had you on their watch list
19 for week, so go complain to them [a]bout setting you up.  Hahaha.
20 Worthless loser."

21   <u>Overt Act No. 30:</u>   In or around early October 2021, after the
22 LASD narcotics detective whom LASD Deputy 1 contacted obtained a
23 warrant from a Los Angeles County Superior Court Judge to search
24 Victim R.C.'s residence, LASD Deputy 1 received a communication from
25 the LASD narcotics detective that officers did not find any illegal
26 drugs inside Victim R.C.'s residence during the search, which took
27 place on or about October 12, 2021 and during which Victim R.C. was
28 detained in an LASD vehicle.

1

*Scheme Involving Victim E.Z.*

2    <u>Overt Act No. 31:</u>    On November 15, 2021, defendant IZA hired

3    Private Investigator 1 to locate and surveil Victim E.Z., in hopes of

4    recovering a laptop from Victim E.Z. believed to contain millions in

5    cryptocurrency.

6    <u>Overt Act No. 32:</u>    On November 21, 2021, while defendant IZA

7    and Victim E.Z. were meeting outside a gas station/convenience store

8    in Riverside County, at least one of defendant IZA's bodyguards, who

9    followed Victim E.Z.'s vehicle to the location, approached Victim

10   E.Z. and defendant IZA carrying a firearm.

11   <u>Overt Act No. 33:</u>    On November 21, 2019, defendant IZA's armed

12   bodyguard caused Victim E.Z. to run away and call 911.

13   <u>Overt Act No. 34:</u>    On November 21, 2021, after Victim E.Z.

14   fled, defendant IZA and his bodyguards collected two bags from the

15   trunk of Victim E.Z.'s vehicle and left.

16   <u>Overt Act No. 35:</u>    Beginning in or around November 2021 and

17   continuing into March 2022, LASD Deputy 1 and LASD Deputy 3 accessed

18   and used sensitive law enforcement databases and confidential

19   databases to which LASD deputies had access to obtain PII for Victim

20   E.Z., Victim E.Z.'s associate, Victim D.D., Victim D.D.'s family

21   members, and others.

22   <u>Overt Act No. 36:</u>    On December 2, 2021, defendant IZA caused

23   text messages to be sent to Victim E.Z. containing photographs of

24   confidential database reports showing Victim E.Z.'s PII, including

25   Victim E.Z.'s home address and vehicles registered to Victim E.Z.

26   <u>Overt Act No. 37:</u>    On December 15, 2021, defendant IZA caused a

27   text message to be sent to Victim D.D. stating that the sender knew

28   Victim E.Z. was staying at Victim D.D.'s residence; that people were

13

1    on their way to Victim D.D.'s residence; and that Victim D.D. should

2    tell Victim E.Z. to "give up the laptop and phone and [Victim E.Z.]

3    gets to live[.] [O]therwise [Victim E.Z.] will die tonight."

4        Overt Act No. 38:   On December 15, 2021, defendant IZA and

5    several of his bodyguards, including law enforcement officers,

6    traveled to Victim D.D.'s residence in Orange County in search of

7    Victim E.Z.

8        Overt Act No. 39:   In or around January 2022, defendant IZA and

9    LASD Deputy 1 discussed and agreed that LASD Deputy 1 would attempt

10   to locate Victim E.Z. by obtaining a search warrant related to Victim

11   E.Z.'s telephone number.

12       Overt Act No. 40:   On January 6, 2022, LASD Deputy 1 applied

13   for and obtained a search warrant from a Los Angeles County Superior

14   Court Judge for GPS location information associated with multiple

15   telephone numbers, including Victim E.Z.'s number.

16       Overt Act No. 41:   On January 6, 2022, in the sworn affidavit

17   supporting the warrant application, LASD Deputy 1 falsely stated that

18   Victim E.Z.'s telephone number was associated with a suspect in a

19   firearms investigation.

20       Overt Act No. 42:   In or around January 2022, after securing

21   the warrant for GPS location information associated with Victim

22   E.Z.'s phone, LASD Deputy 1 used the GPS location information to

23   locate a residence where Victim E.Z. was staying.

24       Overt Act No. 43:   On January 19, 2022, defendant IZA sent a

25   text message to Private Investigator 1 stating, "I found where

26   [Victim E.Z.] staying," and provided Victim E.Z.'s address.

27       Overt Act No. 44:   On January 19, 2022, defendant IZA told

28   Private Investigator 1 that Victim E.Z. was located by pinging Victim

14

E.Z.'s phone and said: "The ping was done by law enforcement themselves . . . It took a Warrant . . . And had to get signed by judge."

Overt Act No. 45:  On March 12, 2022, Co-Conspirator 3 and Private Investigator 1 met to discuss plans to rob Victim D.D.

Overt Act No. 46:  On March 12, 2022, Co-Conspirator 3 traveled to a location where Victim D.D. was found, surveilled the location, physically assaulted Victim D.D., and stole a laptop that Victim D.D. had in Victim D.D.'s possession.

Overt Act No. 47:  On March 12, 2022, Co-Conspirator 3 went to defendant IZA's residence in Bel Air and presented the laptop to defendant IZA.

Overt Act No. 48:  On March 13, 2022, defendant IZA caused a text message to be sent to Victim E.Z. containing photographs of Victim E.Z.'s family members and Victim E.Z.'s car and stating, "Everyone you know."

Overt Act No. 49:  On March 14, 2022, defendant IZA caused threatening messages to be sent to Victim D.D. regarding a laptop.

Overt Act No. 50:  On March 30, 2022, defendant IZA caused three armed individuals to force entry into Victim E.Z.'s residence and use the firearms to force Victim E.Z. into relinquishing the laptop; as the three individuals forced the door open, Victim E.Z. fired a gun in the direction of the three armed individuals, causing them to flee.

Overt Act No. 51:  In or around early June 2022, defendant IZA caused a video to be sent to Victim E.Z. of the attempted home invasion of Victim E.Z.'s residence, which appears to have been filmed by one of the three armed individuals.

COUNT TWO

[18 U.S.C. §§ 242, 2(a), 2(b)]

On or about January 6, 2022, in Los Angeles County, within the Central District of California, defendant ADAM IZA, LASD Deputy 1, and others known and unknown to the Grand Jury, each aiding and abetting the others, while acting under color of the laws of the State of California, willfully deprived, and willfully caused to be deprived, Victim E.Z. of rights secured and protected by the Constitution and laws of the United States, namely, the right to be free from unreasonable searches and seizures.

COUNT THREE

[26 U.S.C. § 7201]

Beginning no later than in or around January 2020 and continuing through at least on or about May 17, 2021, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ADAM IZA willfully and affirmatively attempted to evade the assessment of approximately $1,755,357 in federal taxes due and owing to the United States of America, for the calendar year 2020, by committing the following affirmative acts, among others:

a.  On or about May 17, 2021, defendant IZA failed to file a Form 1040 for the calendar year 2020, to conceal and avoid reporting to the IRS the gross income defendant IZA obtained from Zort.

b.  On or about April 15, 2021, defendant IZA failed to file a U.S. Corporate Income Tax Return (Form 1120) for the calendar year 2020, to conceal and avoid reporting to the IRS the gross income Zort obtained from the fraudulent schemes.

c.  Defendant IZA concealed and attempted to conceal his ownership and control of Zort, including in his communications with payors to the Zort bank account.

d.  Defendant IZA sent approximately $2,689,605 from Zort's BOA bank account to a U.S. cryptocurrency custodian, to conceal and avoid reporting to the IRS gross income received by Zort.

e.  Defendant IZA used Zort corporate bank accounts and caused Co-Conspirator 1 to engage in transactions involving Zort corporate bank accounts, including direct payments, cashier's checks, cash withdrawals, and credit card payments, to expend funds obtained through the fraudulent schemes on personal items for the benefit of

defendant IZA and Co-Conspirator 1, including, but not limited to, the following:

i.    On or about October 8, 2020, defendant IZA leased a 2018 Ferrari 488 Spyder in Zort's name, using funds from Zort's BOA bank account.  Defendant IZA spent $125,000 on the downpayment and $13,312 on monthly payments.

ii.    On or about December 7, 2020, defendant IZA leased a 2019 Ferrari 488 Pista and a 2019 Lamborghini Aventador SVJ in Zort's name, using funds from Zort's BOA bank account.  For the 2019 Ferrari 488 Pista, defendant IZA spent $161,300 on the down payment and one monthly payment of $5,000.  For the 2019 Lamborghini Aventador SVJ, defendant IZA spent $200,439 on the down payment and one monthly payment of $5,000.

iii. Defendant IZA and Co-Conspirator 1 spent approximately $72,558 on luxury goods using funds from Zort bank accounts.

1

COUNT FOUR

2

[26 U.S.C. § 7201]

3     Beginning no later than in or around January 2021 and continuing

4     through at least on or about April 18, 2022, in Los Angeles County

5     and Orange County, within the Central District of California, and

6     elsewhere, defendant ADAM IZA willfully and affirmatively attempted

7     to evade the assessment of approximately $6,772,725 in federal taxes

8     due and owing to the United States of America, for the calendar year

9     2021, by committing the following affirmative acts, among others:

10    a.   In or around February 2021, defendant IZA caused Co-

11    Conspirator 1 to incorporate Dream, act as its sole director and

12    officer, and open bank accounts to act as a shell corporation through

13    which income from the fraudulent schemes could be directed.

14    b.   On or about April 18, 2022, defendant IZA failed to file a

15    Form 1040 for the calendar year 2021, to conceal and avoid reporting

16    to the IRS the gross income defendant IZA obtained from Zort and

17    Dream.

18    c.   On or about April 18, 2022, defendant IZA failed to file a

19    U.S. Corporate Income Tax Return (Form 1120) for the calendar year

20    2021, to conceal and avoid reporting to the IRS the gross income Zort

21    obtained from the fraudulent schemes.  Defendant IZA concealed and

22    attempted to conceal, and caused Co-Conspirator 1 to conceal and

23    attempt to conceal, defendant IZA's interest in Zort and Dream,

24    including in communications with payors, corporate filings, financial

25    documents, civil litigants, and tax preparers.

26    d.   Defendant IZA sent approximately $11,115,975 from Zort's

27    BOA and Chase bank accounts to a Singapore-based investment firm for

28    the purchase of cryptocurrency, to conceal and avoid reporting to the

1  IRS the gross income received.

2      e.  Defendant IZA used Zort and Dream corporate bank accounts,

3  and caused Co-Conspirator 1 to engage in transactions involving Zort

4  and Dream corporate bank accounts, including direct payments,

5  cashier's checks, cash withdrawals, and credit card payments, to

6  expend funds obtained through the fraudulent schemes to acquire

7  personal items for the benefit of defendant IZA and Co-Conspirator 1,

8  including, but not limited to, the following:

9      i.  Defendant IZA made lease payments on the 2019 Ferrari

10  488 Pista and 2019 Lamborghini Aventador SVJ using funds from Zort's

11  BOA bank account.  For the 2019 Ferrari 488 Pista, defendant IZA

12  spent $78,579 on monthly payments.  For the 2019 Lamborghini

13  Aventador SVJ, defendant IZA spent $21,943 on monthly payments.

14      ii.  On or about March 15, 2021, defendant IZA leased a

15  third car, a 2021 Lamborghini Aventador SVJ Roadster, in Zort's name,

16  using funds from Zort and Dream bank accounts.  Defendant IZA and Co-

17  Conspirator 1 spent $204,072 on the downpayment and $53,792 on

18  monthly payments.

19      iii. On or about June 30, 2021, defendant IZA leased a

20  residential property in Bel Air with a monthly rent of $200,000.

21  Defendant IZA spent approximately $1,640,007 from Zort's business

22  accounts to pay for the security deposit and rent for this

23  residential property.

24      iv.  Defendant IZA and Co-Conspirator 1 spent approximately

25  $280,000 for rent on a residential property in the Newport Coast

26  neighborhood, using funds from Zort and Dream bank accounts.

27      v.  Defendant IZA and Co-Conspirator 1 withdrew

28  approximately $770,000 in cash from Zort and Dream bank accounts,

21

including $263,000 from Zort's BOA account, $120,000 from Zort's Chase account, and $387,000 from Dream's BOA account.

vi.   Defendant IZA and Co-Conspirator 1 purchased approximately $667,255 in luxury goods from Zort and Dream bank accounts.

COUNT FIVE

[26 U.S.C. § 7201]

Beginning no later than on or about January 2022 and continuing through at least in or around April 18, 2023, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ADAM IZA willfully and affirmatively attempted to evade the assessment of approximately $3,414,346 in federal taxes due and owing to the United States of America, for the calendar year 2022, by committing the following affirmative acts, among others:

a.    In or around February 2021, defendant IZA caused Co-Conspirator 1 to incorporate Dream, act as its sole director and officer, and open bank accounts to act as a shell corporation through which income from the fraudulent schemes could be directed.

b.    In or around April 2022, defendant IZA caused Co-Conspirator 1 to incorporate Rise, act as its sole director and officer, and open a bank account to act as a shell corporation through which income from the fraudulent schemes could be directed.

c.    On or about April 18, 2023, defendant IZA failed to file a Form 1040 for the calendar year 2022, to conceal and avoid reporting to the IRS the gross income defendant IZA obtained from Zort, Dream, and Rise.

d.    On or about April 18, 2023, defendant IZA failed to file a U.S. Corporate Income Tax Return (Form 1120) for the calendar year 2022, to conceal and avoid reporting to the IRS the gross income Zort obtained from the fraudulent schemes.

e.    Defendant IZA concealed and attempted to conceal, and caused Co-Conspirator 1 to conceal and attempt to conceal, his interest in Zort, Dream, and Rise, including in communications with

23

1  payors, corporate filings, financial documents, civil litigants, and
2  tax preparers.

3      f.    Defendant IZA sent approximately $661,000 from Zort's Chase
4  bank accounts to a Singapore-based investment firm for the purchase
5  of cryptocurrency, to conceal and avoid reporting to the IRS gross
6  income received by Zort.

7      g.    Defendant IZA used Zort, Dream, and Rise corporate bank
8  accounts, and caused Co-Conspirator 1 to engage in transactions
9  involving Zort and Dream corporate bank accounts, including direct
10  payments, cashier's checks, cash withdrawals, and credit card
11  payments, to expend funds obtained through his fraudulent schemes to
12  acquire personal items for the benefit of defendant IZA and Co-
13  Conspirator 1, including, but not limited to, the following:

14          i.    Defendant IZA and Co-Conspirator 1 made lease payments
15  on the 2021 Lamborghini Aventador SVJ using funds from Zort and Rise
16  bank accounts.  Defendant IZA and Co-Conspirator 1 spent $63,884 on
17  monthly payments.

18          ii.   Defendant IZA and Co-Conspirator 1 made lease payments
19  on the 2019 Ferrari 488 Pista using funds from Zort, Dream, and Rise
20  bank accounts.  Defendant IZA and Co-Conspirator 1 spent $67,146 on
21  monthly payments.

22          iii. On or about February 14, 2022, defendant IZA purchased
23  a 2022 Vanderhall Venice GT, spending approximately $42,078 from
24  Zort's Chase bank account.

25          iv.   In February 2022, defendant IZA leased a 2019 Rolls-
26  Royce Phantom in Zort's name and using Zort's Chase bank account.
27  Defendant IZA spent $200,000 on the downpayment and $49,529 on
28  monthly payments.

1           v.    On or about September 27, 2022, defendant IZA and Co-

2    Conspirator 1 purchased a 2022 Mercedes Benz GLS600Z4, spending

3    approximately $219,248 from Rise's Chase bank account.

4           vi.   On or about September 27, 2022, defendant IZA and Co-

5    Conspirator 1 purchased a 2018 Mercedes Benz GTCA, spending

6    approximately $62,807 from Rise's Chase bank account.

7           vii. Defendant IZA spent approximately $820,621 from Zort's

8    Chase account for rent payments toward the residential property in

9    Bel Air.

10          viii. Defendant IZA and Co-Conspirator 1 spent

11   approximately $282,400 for rent on a residential property in the

12   Newport Coast neighborhood, using funds from Zort, Dream, and Rise

13   bank accounts.

14          ix.   Defendant IZA and Co-Conspirator 1 withdrew

15   approximately $538,427 in cash from Zort, Dream, and Rise bank

16   accounts, including $158,000 from Zort's Chase account, $21,000 from

17   Dream's BOA account, $244,703 from Dream's Chase account, and

18   $113,924 from Rise's Chase account.

19          x.    Defendant IZA and Co-Conspirator 1 spent approximately

20   $393,578 in luxury goods from Zort, Dream, and Rise bank accounts.

21          xi.   Defendant IZA and Co-Conspirator 1 made approximately

22   $159,831 in personal expenditures at the Wynn Las Vegas, using funds

23   from the Zort, Dream, and Rise bank accounts.

24          xii. Defendant IZA spent approximately $64,000 on surgery

25   to increase his height using funds from the Rise Chase bank account.

26

27

28

1

FORFEITURE ALLEGATION ONE

2

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3      1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 924(d)(1), and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offense set forth in Count One of this Indictment.

9      2.    Any defendant so convicted shall forfeit to the United

10  States of America the following:

11         (a)   All right, title, and interest in any firearm or

12  ammunition involved in or used in any such offense; and

13         (b)   To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16     3.    Pursuant to Title 21, United States Code, Section 853(p),

17  as incorporated by Title 28, United States Code, Section 2461(c), the

18  convicted defendant shall forfeit substitute property, up to the

19  value of the property described in the preceding paragraph if, as the

20  result of any act or omission of said defendant, the property

21  described in the preceding paragraph or any portion thereof (a)

22  cannot be located upon the exercise of due diligence; (b) has been

23  transferred, sold to, or deposited with a third party; (c) has been

24  placed beyond the jurisdiction of the court; (d) has been

25  substantially diminished in value; or (e) has been commingled with

26  other property that cannot be divided without difficulty.

27

28

1                         FORFEITURE ALLEGATION TWO

2                [26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

3          1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 26,

6    United States Code, 7301, and Title 28, United States Code, Section

7    2461(c), in the event of the defendant's conviction of the offenses

8    set forth in any of Counts Three through Five of this Indictment.

9          2.    The defendant, if so convicted, shall forfeit to the United

10   States of America the following:

11              a.    Any property sold or removed by the defendant in fraud

12   of the internal revenue laws, or with design to avoid payment of such

13   tax, or which was removed, deposited, or concealed, with intent to

14   defraud the United States of such tax or any part thereof;

15              b.    All property manufactured into property of a kind

16   subject to tax for the purpose of selling such taxable property in

17   fraud of the internal revenue laws, or with design to evade the

18   payment of such tax;

19              c.    All property whatsoever, in the place or building, or

20   any yard or enclosure, where the property described in subsection (a)

21   or (b) is found, or which is intended to be used in the making of

22   property described in subsection (a), with intent to defraud the

23   United States of tax or any part thereof, on the property described

24   in subsection (a);

25              d.    All property used as a container for, or which shall

26   have contained, property described in subsection (a) or (b);

27              e.    Any property (including aircraft, vehicles, vessels,

28   or draft animals) used to transport or for the deposit or concealment

                                        27

of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

       f.   To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

    3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///

///

1   substantially diminished in value; or (e) has been commingled with

2   other property that cannot be divided without difficulty.

3

4                                              A TRUE BILL

5

6                                              /S/ _____

7                                              Foreperson

8

9   E. MARTIN ESTRADA
    United States Attorney

10

11

12  MACK E. JENKINS
    Assistant United States Attorney
13  Chief, Criminal Division

14  LINDSEY GREER DOTSON
    Assistant United States Attorney
15  Chief, Public Corruption and
    Civil Rights Section

16  DANIEL J. O'BRIEN
    Assistant United States Attorney
17  Senior Litigation Counsel
    Public Corruption and
18  Civil Rights Section

19  J. JAMARI BUXTON
    Assistant United States Attorney
20  Public Corruption and
    Civil Rights Section

21

22  MAXWELL COLL
    Assistant United States Attorney
23  Cyber and Intellectual Property
    Crimes Section

24

25

26

27

28